## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARRISON UZOR,
    Plaintiff,

    v.

                    **CIVIL ACTION NO. 25-CV-1873**

JOEL M. FLINK, *et al.*,
    Defendants.

### MEMORANDUM

WEILHEIMER, J.                                                    JUNE  , 2025

    Plaintiff Harrison Uzor asserts claims against Defendants Joel M. Flink and the Law Offices of Frederic I. Weinberg & Associates for violations of the Fair Debt Collection Practices Act ("FDCPA"). Uzor seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Uzor leave to proceed *in forma pauperis* and dismiss his Complaint.

## I.    FACTUAL ALLEGATIONS[1]

    Uzor alleges that Defendants "regularly attempt to collect consumer debts" and are therefore debt collectors as defined by the FDCPA. (Compl. at 4.) Uzor states that he incurred a personal credit card debt, which was "originally with Bank of America" and which is now "the subject of collection efforts by Defendants." (*Id.*) Uzor also states that on November 3, 2023, Defendants initiated arbitration proceedings in the Court of Common Pleas for Montgomery County, Pennsylvania.[2] Over a year later, on February 14, 2025, Uzor allegedly "sent a written

---

[1] The factual allegations are taken from Uzor's Complaint. (ECF No. 2.) The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] The public record reflects that the case Uzor references, *Bank of America v. Fink*, Case No. 2023-24527 (C.P. Mont.), was initiated by Bank of America on November 3, 2023, with the filing of a Civil Action Complaint. On June 6, 2025, the state court granted a petition filed by

Debt Validation Request to Defendants." (*Id.*)  The Debt Validation Request demanded from

Defendants:

- "a contract or agreement bearing [Uzor's] wet signature";
- "The full Chain of Assignment documenting the ownership of the debt from the original creditor;
- "The Forward Flow Agreement establishing the ongoing authority to collect such debts";
- "A complete accounting of the alleged debt, including payment history and all statements"; and
- "Documentation establishing Defendants' legal authority to collect the debt from the original creditor."

(*Id.* at 4-5 (emphasis omitted).)

In response to Uzor's Debt Validation Request, Defendants allegedly "failed to validate

the debt as required" but instead "provided incomplete documents, including unauthenticated

computer printouts with no wet signature or evidence of ownership." (*Id.* at 5.)  On March 21,

2025, Uzor sent Defendants a "formal Cease and Desist letter," wherein he requested they

"immediately stop all collection activities" until they send proper debt validation. (*Id.* (emphasis

omitted).)  Despite the Cease and Desist letter, Defendants "continued pursuing arbitration" and

"actively attempt[ed] to collect the alleged debt" owed by Uzor. (*Id.*)  Uzor states that after he

filed a complaint with the Consumer Financial Protection Bureau ("CFPB"), Defendant

responded that they did not possess the chain of assignment or the forward flow agreement. (*Id.*)

Uzor alleges that Defendants' admissions in the CFPB matter confirm "their lack of legal

authority to collect the debt." (*Id.*)

---

Bank of America and closed the case.  Joel M. Fink, a named Defendant in this action,
represented Bank of America in the state court proceeding.

Based on these allegations, Uzor asserts that Defendants violated the FDCPA, specifically 15 U.S.C. §§ 1692g(b), 1692c(c), and 1692e. For relief, Uzor seeks money damages. (*Id.* at 6.)

## II.    STANDARD OF REVIEW

Because Uzor appears to be incapable of paying the filing fees to commence this action, the Court will grant him leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Uzor's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Uzor is proceeding *pro se*, the Court construes the allegations in the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III.    DISCUSSION

The FDCPA "provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005). "Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Rotkiske v. Klemm*,

589 U.S. 8, 10 (2019) (quoting 15 U.S.C. § 1692(e)). "The FDCPA pursues these stated purposes by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices." *Id.* (citing 15 U.S.C. §§ 1692b-1692j); *see also Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (*en banc*) ("The FDCPA protects against abusive debt collection practices by imposing restrictions and obligations on third-party debt collectors.").

To state a claim under the FDCPA, a plaintiff must allege that (1) he or she "is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (internal citation omitted). Where a plaintiff fails to allege facts supporting each of these elements, the FDCPA claim is not plausible. *See Humphreys v. McCabe Weisberg & Conway, P.C.*, 686 F. App'x 95, 97 (3d Cir. 2017) (*per curiam*) (concluding that the FDCPA claim was not pled based on "conclusory and speculative statements that cannot survive a motion to dismiss").

Before the Court can assess whether Uzor has stated plausible FDCPA claims, it must first address whether Uzor has sufficiently alleged standing to pursue each of the claims. Article III of the Constitution limits the power of the federal judiciary to the resolution of cases and controversies, and this "requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact is "an invasion of a legally

protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). "'For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1.).

In *TransUnion LLC v. Ramierz*, 594 U.S. 413, 425 (2021), the Supreme Court focused on the "concreteness" prong of the standing analysis and expressly rejected the notion that "a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 426 (quoting *Spokeo*, 578 U.S. at 341). Instead, a plaintiff must allege a concrete injury separate and apart from an injury under the law. *Id.* (explaining that "an injury in law is not an injury in fact"). The Court differentiated between tangible and intangible injuries. Where a defendant has caused a tangible harm—i.e., a physical or monetary harm—the plaintiff will have suffered a concrete injury in fact. *Id.* at 424-25. Intangible harms may also be concrete, so long as those injuries bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425. Because the types of injuries that confer standing differ among FDCPA claims, the Court must consider whether Uzor has sufficiently alleged standing with respect to each of his three FDCPA claims.

### A.    Section 1692g(b) Claim

Uzor asserts a claim under § 1692g(b), alleging that Defendants failed to provide proper debt validation after he requested it. Uzor alleges that he sent a written Debt Validation Request to Defendants asking for a contract with a "wet signature," a "Chain of Assignment," a "Forward Flow Agreement," a "complete accounting of the alleged debt," and documentation establishing Defendants' "legal authority to collect debt from the original creditor." (Compl. at 4-5.) Uzor

further alleges that Defendants "failed to validate the debt as required" and instead "provided incomplete documents." (*Id.* at 5.)

Section 1692g generally sets forth the procedures and responsibilities for a consumer and a debt collector when a consumer disputes the validity of a debt with a debt collector. *See* 15 U.S.C. § 1692g(a)-(e).

Section 1692g(b), which Uzor specifically cites, states that:

> If the consumer notifies the debt collector in writing within the thirty-day period described by [§ 1692g(a)] that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt . . . until the debt collector obtains a verification of the debt . . . .

15 U.S.C. § 1692g(b). Section 1692g(a) requires a debt collector to send a notice with certain information about the debt "[w]ithin five days after the initial communication with a consumer in connection with the collection of [that] debt," unless that information is already contained in the initial communication. 15 U.S.C. § 1692g(a); *see also Szczurek v. Pro. Mgmt. Inc.*, 627 F. App'x 57, 62 (3d Cir. 2015) ("Section 1692g(a) explicitly identifies the information that a debt collector must include in a debt collection letter, such as the amount of the debt, the name of the creditor to whom the debt is owed, and the procedures available to the consumer should he dispute the validity of the debt."). Section 1692g(a) also requires that the written notice inform the consumer that, if he "notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt" and mail it to the consumer. 15 U.S.C. § 1692g(a)(4). Interpreting these two sections together, "[s]ection 1692g(b) guarantees that, if a consumer invokes [his] § 1692g(a) right to request information about a debt, and the consumer invokes this right in writing and within the thirty-day period prescribed by statute, a debt collector must 'cease collection of the debt' until it has

provided the requested information to the debtor." *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *1 (3d Cir. Apr. 18, 2023).

In assessing whether Uzor has standing to assert a claim under § 1692g(b), the Court notes that Uzor appears to assert an "informational injury" in connection with this claim. An informational injury—*i.e.*, one where the plaintiff "fails to receive information to which he is legally entitled"—can be "sufficiently concrete to confer standing." *Kelly v. RealPage Inc.*, 47 F.4th 202, 213 (3d Cir. 2022) (cleaned up). A plaintiff asserting an informational injury must show "(1) the omission of information to which they claim entitlement, (2) 'adverse effects' that flow from the omission, and (3) the requisite nexus to the 'concrete interest' Congress intended to protect." *Id.* at 214; *see also Pub. Int. Legal Found. v. Sec'y Commonwealth of Pennsylvania*, 136 F.4th 456, 464 (3d Cir. 2025) ("[A] plaintiff seeking to assert an informational injury must establish *a nexus* among the omitted information to which she has entitlement, the purported harm *actually caused* by the specific violation, and the '*concrete interest*' that Congress identified as 'deserving of protection' when it created the disclosure requirement." (quoting *Kelly*, 47 F.4th at 213 (emphasis in original))).

Uzor has not properly alleged that he suffered an informational injury necessary to confer standing to assert his § 1692g(b) claim. First, he has not alleged that Defendants failed to provide him information to which he was entitled. Uzor alleges that in response to his "Debt Validation Request," Defendants "failed to validate the debt as required" because they "provided incomplete documents, including unauthenticated printouts with no wet signature or evidence of ownership." (Compl. at 5.) However, the express language of the FDCPA does not require "wet signatures" or "evidence of ownership." *See* 15 U.S.C. § 1692g; *see also Thornton v. Hughes, Watters & Askanase, LLP*, No. 16-66, 2016 WL 8710442, at *8, 10 (S.D. Tex. Oct. 21, 2016)

7

(rejecting argument that verification of debt under § 1692g was improper because promissory note did not contain "wet ink signature"), *report and recommendation adopted*, 2016 WL 6775676 (S.D. Tex. Nov. 16, 2016). Instead, assuming a consumer like Uzor either disputes a debt or requests the name and address of the original creditor, the debt collector must cease collection efforts until it "obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor" and mails to the consumer either the "copy of such verification or judgment" or the "name and address of the original creditor." 15 U.S.C. § 1692g(b). Uzor does not allege that he disputed the debt or that he requested the name and address of the original creditor. Nor is it clear from the Complaint what information Defendants provided Uzor and if the information included the name and address of the original creditor or a copy of the judgment, in compliance with the statute. Contrary to Uzor's assertion, Defendants were not required to prove ownership or chain of assignment or to provide "wet signatures." *See* 15 U.S.C. § 1692g; *Dixon v. Stern & Eisenburg, PC*, 652 F. App'x 128, 133 (3d Cir. 2016) (*per curiam*) (stating that § 1692g "does not require a debt collector to independently investigate a debt before it begins collection activities, let alone affirmatively verify every aspect of the chain of assignment of the right to collect on a debt"). To the extent that Uzor claims that the information Defendants provided about the debt was not clear, this is also not sufficient to maintain an informational injury to assert standing. *See Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 146 (3d Cir. 2023) (concluding that informational injury for the purpose of standing cannot be based on the "failure to disclose *clearly and effectively*" but must be based on the omission of information) (emphasis in original).

Even if Defendants failed to provide the requisite information to verify the debt, Uzor nevertheless lacks standing, as he has not alleged any "adverse effects" that flow from that

omission. "An asserted informational injury that causes no adverse effects cannot satisfy Article III." *Pub. Int. Legal Found.*, 136 F.4th at 464 (quoting *TransUnion*, 594 U.S. at 442). Uzor states only that Defendants allegedly violated § 1692g(b) by not properly validating the alleged debt. He alleges no other consequence of Defendants' actions. Simply alleging that Defendants should have but failed to provide certain information under the FDCPA is insufficient to confer standing. *See George v. Rushmore Serv. Ctr.*, LLC, 114 F.4th 226, 236 (3d Cir. 2024) (concluding that the plaintiff did not show an informational injury to confer standing when she simply alleged that the debtor failed to provide information about "to whom the alleged debt was owed and if it was legitimate" and did not allege any downstream financial consequences or other adverse effects); *see also Pub. Int. Legal Found.*, 136 F.4th at 465 ("[I]t is insufficient for Article III standing purposes for a plaintiff asserting an informational injury from a violation of a statute that contains a public disclosure aspect as part of its overall scheme to allege only that he has been denied information."). Accordingly, Uzor has not alleged that he suffered an informational injury and has thus not met his burden in establishing standing to assert a claim under § 1692g(b).[3]

---

[3] Even if Uzor had (or could) properly alleged standing, the claim would nevertheless be dismissed, as pled. Uzor states in conclusory fashion that Defendants "failed to validate the debt as required." (Compl. at 5.) Uzor does not specifically allege how the documents provided by Defendants were allegedly "incomplete" and how Defendants allegedly failed to validate the debt in question. To the extent that Uzor bases his claim on the allegation that Defendants did not provide the specific documents he requested (e.g., a Forward Flow Agreement, Chain of Assignment, and contract containing a wet signature), the claim is not plausible because the FDCPA does not specifically require that these documents be provided to a consumer upon the consumer's request. *See* 15 U.S.C. § 1692; *Dixon*, 652 F. App'x at 133. Moreover, Uzor does not allege any information about the initial communication from Defendants, *see* 15 U.S.C. § 1692g(a), or whether he submitted his "Debt Validation Request" in the appropriate time period under the statute, see 15 U.S.C. § 1692g(b). *See Tauro v. Asset Acceptance*, No. 12-00418, 2012 WL 2359954, at *3 (W.D. Pa. June 20, 2012) (dismissing § 1692g(b) claim as implausible because "[t]he Plaintiff does not allege that . . . the Defendants provided (or failed to provide)

**B.      Section 1692c(c) Claim**

Uzor also asserts a claim under § 1692c(c), alleging that Defendants continued "collection efforts" and "pursuing arbitration" despite receiving from him a March 21, 2025 Cease and Desist letter.  (Compl. at 5, 6.)  Uzor does not describe the "collection efforts" Defendants allegedly undertook, nor does he specifically allege how Defendants pursued arbitration after receiving his Cease and Desist letter.

Section 1692c(c) states that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer," subject to certain exceptions, including to notify the consumer that the debt collector or creditor may invoke ordinary specified remedies or intends to invoke such a remedy.  Courts have concluded that "ordinary litigation documents" served in the context of state court proceedings associated with that debt are excepted from the reach of § 1692c(c).  *See Castillo v. Zucker, Goldberg & Ackerman, LLC*, No. 14-06956, 2015 WL 1268308, at *4 (D.N.J. Mar. 18, 2015); *see also Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 276-77 (3d Cir. 2013) (observing that "many litigation activities" are "authorized" under § 1692c(c)'s exception that a debt collector may "'notify the consumer that the debt collector or creditor may invoke' or 'intends to invoke' a 'specified remedy'" (quoting *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995))).  Indeed, the Supreme Court has observed that "it would be odd if the [FDCPA] empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt."  *Heintz*, 514 U.S. at 296.  To the contrary,

_____

either an initial communication or validation notice containing the information required by law. In order to state a valid FDCPA claim, the Plaintiff must do so.").

courts may plausibly understand the exceptions in § 1692c(c) to treat "court-related document[s]" as notifications that the debt collector or creditor is seeking ordinary judicial remedies. *Id.*

Uzor has failed to satisfy his burden that he has standing to assert a claim under § 1692c(c). As noted above, intangible harms may also be concrete, so long as those injuries bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC*, 594 U.S. at 425. A violation of § 1692c(c) that "implicates core privacy concerns" can serve as an intangible harm that becomes concrete for purposes of conferring standing. *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 280 (3d Cir. 2019); *see also TransUnion LLC*, 594 U.S. at 425 (recognizing "intrusion upon seclusion" as an "intangible harm"); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191 (10th Cir. 2021) (finding that the debtor had standing to pursue a § 1692c(c) claim where the debt collector "made an unwanted call and left her a voicemail about a debt" after she disputed the debt and requested that it cease communications and noting that the debtor's "concrete injury" bore a close relationship to the tort of intrusion upon seclusion).

Uzor has not alleged any concrete injury—tangible or intangible—that he suffered after Defendants allegedly continued debt collection efforts despite his Cease and Desist letter. His vague assertion that Defendants continued to "pursu[e] arbitration" and "actively attempt to collect the alleged debt" does not sufficiently allege an injury in fact. Uzor does not describe any specific actions taken by Defendants that could rise to the level of implicating core privacy concerns. Accordingly, Uzor does not have standing to pursue a claim under § 1692c(c).[4]

---

[4] Even if Uzor had properly alleged standing, he fails to state a plausible claim under § 1692c(c). To the extent Uzor claims that Defendants violated § 1692c(c) by continuing to pursue remedies in the Montgomery County Court of Common Pleas action, the claim is not plausible. Uzor has

### C.    Section 1962e Claim

Uzor also asserts a claim under § 1692e, alleging that Defendants "misrepresent[ed] or fail[ed] to disclose material facts about the debt's legal ownership and enforceability." (Compl. at 6.)  Section 1962e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  To state a claim under § 1692e, a false statement "must be material when viewed through the least sophisticated debtor's eyes." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015); *see also Riccio*, 954 F.3d at 594.  Under the least sophisticated debtor test, a court must consider "whether a debt collector's statement in a communication to a debtor would deceive or mislead the least sophisticated debtor." *Huber*, 84 F.4th at 150 (citing *Jensen*, 791 F.3d at 420).  "Because the standard is objective, 'the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be.'" *Id.* (citing *Jensen*, 791 F.3d at 419).

The basis for Uzor's § 1692e claim is not clear from his Complaint.  He alleges one conclusory statement to support the claim—that Defendants misrepresented material facts or failed to disclose material facts "about the debt's legal ownership and enforceability." (Compl. at 6.)  It is not clear what communication or omissions Uzor references or how Defendants allegedly misrepresented the debt.  Based on the dearth of factual allegations, Uzor has not

---

not described any specific action taken by Defendants that would not qualify under the ordinary litigation documents exception to § 1692c(c).  Further, Uzor merely alleges vague and conclusory statements about Defendants' conduct after their alleged receipt of the Cease and Desist letter, which is insufficient to raise a plausible § 1692c(c) claim.  If Uzor can establish in an amended complaint that he has standing to assert a claim under § 1692c(c), he must also assert facts about the specific communications allegedly made by Defendants that he believes violated § 1692c(c).

established that he has standing to assert a § 1692e claim.[5] First, he has not established that he suffered an informational injury for the same reasons he did not allege an informational injury in connection with his § 1692g(b) claim. Uzor has not alleged that Defendants failed to provide him information to which he was entitled. Nor has he alleged that he suffered any adverse effects from the omission of information about the debt. *See Pub. Int. Legal Found.*, 136 F.4th at 464; *George*, 114 F.4th at 236.

Second, Uzor has not established standing to assert a § 1692e claim under the traditional approach. *See Huber*, 84 F.4th at 146 (explaining that under the traditional approach prescribed by the Supreme Court in *TransUnion*, courts should determine "whether an alleged injury has a close relationship to harm traditionally recognized as providing a basis for a lawsuit in American courts" (internal quotation marks omitted)). The Third Circuit has determined that, under the traditional approach, a violation of § 1692e is analogous to the tort of fraudulent misrepresentation. *Id.* at 148. By reference to fraudulent misrepresentation, the Court held that to establish standing, a § 1692e claimant "must identify . . . a consequential action or inaction following from the receipt of a misleading or deceptive" communication. *Id.* at 149 (concluding that the plaintiff established standing because she not only alleged confusion but also that she had two resulting financial consequences due to the defendant's misleading and deceptive collection letter); *see also Martinez v. Jefferson Cap. Sys., LLC*, No. 23-22367, 2024 WL 3548943, at *2 (D.N.J. July 26, 2024) (concluding that plaintiff failed to demonstrate he suffered a concrete injury to confer standing where he merely alleged that the defendant's letter caused confusion and did not allege that he took any consequential action or inaction after receiving the

---

[5] For similar reasons, Uzor also fails to state a plausible claim, even if had properly pled standing.

letter). Uzor has not alleged that he took any consequential action or inaction in response to Defendants' alleged misrepresentation. Accordingly, Uzor has also not established that he has standing to assert a § 1692e claim, either under the informational injury doctrine or under the traditional approach.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Uzor leave to proceed *in forma pauperis* and dismiss his Complaint. The Court will permit Uzor an opportunity to file an amended complaint if he demonstrates that he has standing to assert the FDCPA claims and can correct the defects the Court has noted as to those claims. An appropriate Order follows.

BY THE COURT:

GAIL A. WEILHEIMER, J.